NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SMALL, | |
| Plaintiff, | Civ. No. 13-7642 (PGS-TJB) |
| v. | |
| COMMISSIONER GARY LANIGAN, et al. | MEMORANDUM |
| Defendants. | |

**PETER G. SHERIDAN, U.S.D.J.**

This matter comes before the Court on Plaintiff Robert Small's motion for partial summary judgment, (ECF No. 105), and a motion for summary judgment filed by Defendants Stephen Alaimo, Anderson, SCO. Myongsu Bong, SCO. Michael Fischer, SCO. William Hayes, Steven Johnson, Gary Lanigan, New Jersey Department of Corrections ("NJDOC"), New Jersey State Prison ("NJSP"), Sgt. David Rokeach, Robert Saunders, Sgt. Timmy Thorne, Sgt. Ernesto Vasquez, and Corrections Officer Whitham (collectively defendants) (ECF No. 106). For the following reasons, the motions are denied. The matter shall be set for trial.

I.

Plaintiff Robert Small was incarcerated at NJSP from 2008 to 2016. He "is paralyzed from the waist down and has no control of his lower extremities. He relies on a wheelchair for mobility and uses adult briefs to contain all bodily waste." (First Amendment Complaint "FAC" ECF No. 39 ¶ 21.). He cannot use the "regular" showers at NJSP without another person helping him to move from his wheelchair to a shower chair. (*Id.* ¶ 22). Plaintiff states he requires daily

showers "due to his medical condition, including risk of developing wounds from skin breakdown" caused by wearing the adult briefs. (*Id.* ¶ 24). In 2011, Plaintiff was placed in administrative segregation as the result of a disciplinary infraction. (*Id.* ¶ 27). The administrative segregation unit did not have an accessible shower, and Defendants refused to assign an inmate orderly or other personnel to assist Plaintiff in taking a shower. (*Id.* ¶¶ 28-29). Several corrections officers, defendants Fischer, Bong, and Whitham, told Plaintiff "If you can get into the shower by yourself, you can take a shower." (*Id.* ¶ 30). Fischer, Bong, and Whitham told Plaintiff in January 2012 that inmate orderlies were not permitted to assist Plaintiff in showering. (*Id.* ¶ 31). Plaintiff returned to his regular housing assignment on or about January 13, 2012. (*Id.* ¶ 33). Defendants Hayes, Rokeach, Thorne, and Vasquez refused to permit an inmate orderly to assist Plaintiff. (*Id.* ¶¶ 34-36).

Plaintiff filed his complaint in December 2013. (ECF No. 1). The Court administratively terminated the complaint twice before granting Plaintiff's *in forma pauperis* application on February 3, 2015. (ECF No. 8). Defendants filed a motion to dismiss in June 2015, but the motion was dismissed as moot after Plaintiff filed a motion to amend the complaint. (ECF No. 32). Plaintiff filed a motion for a preliminary injunction requiring Defendants to either permit Plaintiff to shower in the infirmary, alleging that the so-called accessible shower was inaccessible by wheelchair, or to require the prison to order an inmate orderly to assist Plaintiff in the shower. (ECF No. 33). The Court held a hearing on October 19, 2015 and granted the motion. The Court ordered Defendants to permit Plaintiff to shower every day. (ECF No. 37). Plaintiff later withdrew his request as he was receiving daily showers. (ECF No. 46).

Plaintiff filed his FAC on October 23, 2015. (ECF No. 39). The FAC alleged Defendants had modified a shower in late 2014 or early 2015 to make it accessible to Plaintiff's wheelchair.

(FAC ¶ 37). Plaintiff alleged that the "accessible" shower was still inaccessible to his wheelchair due to three impediments: the entrance ramp was too steep; there was a cement step at the top of the ramp; and there was a metal threshold barrier. (*Id.* ¶ 38). Plaintiff claimed he was unable to access the designated shower even with the assistance of another person because there was no landing from which he could transfer to the shower chair. (*Id.* ¶ 39). As such, Plaintiff had to rely on inmate orderlies to assist him in the "regular" showers. (*Id.* ¶ 40). No NJSP employees were provided to Plaintiff for assistance. (*Id.* ¶ 41).

Plaintiff further alleges that Defendants began retaliating against him after the complaint was filed. He states Hayes and Saunders refused to allow other inmates to assist Plaintiff in the regular shower. (*Id.* ¶¶ 42-43). Plaintiff was also denied access to showers on days Hayes and Saunders were on duty. (*Id.* ¶ 44). Hayes permitted Plaintiff access to the showers once he was released from prehearing detention. (*Id.* ¶ 45). Saunders continued to allow other inmates to assist Plaintiff in the regular shower. (*Id.* ¶ 46).

Plaintiff has moved for partial summary judgment on his claims that Defendants violated the Americans With Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Equal Protection Clause. Plaintiff also argues Defendants should be enjoined from supporting their defenses because they did not comply with the magistrate's order. Defendants move for summary judgment on the all claims. The Court conducted oral argument on July 18, 2018. The matter is now ripe for decision.

## II.

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the

evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff now moves for summary judgment on his claims that the State Defendants violated Title II by failing to provide him with an accessible shower in NJSP (Count One); retaliation under the ADA ("Count Two"); violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Count Three);[1] violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq. ("NJLAD" Count Four); and violation of the Equal Protection Clause of the Fourteenth Amendment (Count Six). (ECF No. 105-1).[2] Defendants move for summary judgment on all remaining counts of the FAC. (ECF No. 106).

---

[1] Section 504 of the RA has the same requirements as the ADA, "with the additional requirement that a plaintiff alleging a violation of the RA demonstrate that the violation was committed by a program or activity receiving 'Federal financial assistance.'" *Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 762–63 (3d Cir. 2012) (quoting 29 U.S.C. § 794(a)) (internal citation omitted).

[2] The Court granted summary judgment in favor of Defendants on Count Five, claims based on the New Jersey Administrative Code, on February 22, 2016. (ECF No. 61). Only Defendants have moved for summary judgment on Count Seven, violation of the Eighth Amendment.

*1. Sovereign Immunity*

Defendants argue they are entitled to summary judgment on the entire complaint because they are immune from suit. Plaintiff's claims for damages under the Fourteenth Amendment and Eighth Amendment are barred by sovereign immunity to the extent they are brought against Defendants in their official capacities. The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office ....'" *Printz v. United States*, 521 U.S. 898, 930–31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Whether Defendants are entitled to sovereign immunity under the ADA and RA is more complicated. Congress may abrogate states' immunity in federal court "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003). "The first prong of this test is easily satisfied in this case, as Title II of the ADA provides that '[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation.'" *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007) (quoting 42 U.S.C. § 12101(b)(4) (alterations in original)).

The Court must determine "on a claim-by-claim basis, (1) which aspects of the state's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth

Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. 151, 159 (2006). In other words, Title II validly abrogates sovereign immunity for conduct that *actually* violates the Constitution. *See Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 312-13 (D.N.J. 2008), *aff'd sub nom. Muhammad v. NJ Dep't of Corr.*, 396 F. App'x 789 (3d Cir. 2010). As discussed *infra*, there are factual disputes requiring jury determinations on whether Defendants violated the Constitution. Therefore, the Defendants are not entitled to summary judgment on the basis of sovereign immunity at this time.

*2. Violations of Title II*

Both parties assert they are entitled to summary judgment on Plaintiff's ADA and RA claims that he was denied access to the showers by reason of his disability. Plaintiff argues Defendants "failed to provide an accessible shower from the time of Mr. Small's incarceration at [NJSP] in 2008 through his transfer to South Woods State Prison ("SWSP") in May 13, 2016." (ECF No. 105-1 at 14). He points to the 95 ADA violations found by his expert, Dominic Marinelli, in cellblocks 2C and 2BR, including the cell layout and path of access to the showers. (*Id.* at 15). He further argues Defendants became obligated to fully comply with the ADA's requirements for accessible showers once they modified the shower in 2014/2015. He also asserts that assigning an inmate orderly to carry him into a shower instead of a NJSP employee was an improper accommodation under the ADA. (*Id.* at 23).

Defendants argue their conduct did not violate Title II because they provided reasonable accommodations and did not discriminate against Plaintiff because of his disability. They argue Plaintiff was in administrative segregation for portions of the time during which he alleges he

6

was denied a daily shower. Under Department of Corrections policy, inmates in administrative segregation are only permitted access to the showers three times per week. (ECF No. 106-1 at 38). Aside from the week of December 18-24, 2011, Plaintiff was permitted to shower in accordance with this policy with the assistance of an inmate porter, and "Plaintiff has not shown that this minor deviation from prison policy was on account of his disability." (*Id.*). They further argue they provided reasonable accommodations by making an accessible shower available to Plaintiff by installing a ramp, removing a metal barrier, and installing a collapsible rubber barrier. (*Id.*). They also lowered the on/off valves for the shower so Plaintiff could reach them from his wheelchair. (*Id.*). "Based on these modifications, a wheelchair could fully enter the handicapped shower chamber." (ECF No. 106-1 at 39). They argue Plaintiff refused to use the shower, even with the assistance of staff members. (*Id.*). They state no further modifications are possible given the structure of NJSP.

To establish a violation of Title II, Plaintiff must prove: "(1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dahl v. Johnston*, 598 F. App'x 818, 819–20 (3d Cir. 2015) (citing 42 U.S.C. § 12132); *see also Bowers*, 475 F.3d at 553 n.32. Defendants concede that Plaintiff is a qualified individual with a disability.[3] "State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local

---

[3] A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 28 C.F.R. § 35.104.

government.'" *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)).

The Court finds that there are genuine issues of material fact as to whether Defendants failed to provide Plaintiff with a reasonable modification,[4] altered the showers within the meaning of the ADA,[5] and if so, whether Defendants altered the facilities "to the maximum extent feasible."[6] The parties' experts disagree on these points. *See hip Heightened Indep. & Progress, Inc. v. Port Auth. of New York & New Jersey*, 693 F.3d 345, 355 ("The lack of clarity in the record indicates there is a genuine dispute of material fact . . . ."). Whether Defendants violated Title II and the RA must be determined at trial.[7]

---

[4] "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). "Under Title II, the failure of a public entity to provide disabled persons with reasonable modifications constitutes discrimination within the meaning of the [ADA]. *Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 313 (D.N.J. 2008), *aff'd sub nom. Muhammad v. NJ Dep't of Corr.*, 396 F. App'x 789 (3d Cir. 2010).

[5] "[A]n 'alteration' within the meaning of the regulations is a change that affects the usability of the facility involved." *Kinney v. Yerusalim*, 9 F.3d 1067, 1072 (3d Cir 1993). *See also* 28 C.F.R. § 35.151(b).

[6] Plaintiff asserts the "maximum extent feasible" standard only applies in Title III ADA cases. However, there is also language in the implementing regulations for Title II stating that "[e]ach facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the *maximum extent feasible*, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." 28 C.F.R. § 35.151(b)(1)(emphasis added). "In other words, if a public entity chooses to make changes rising to the level of 'alterations' to a facility, it ordinarily must use that opportunity to make the altered part of the facility accessible, as well." *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 635 F.3d 87, 92 (3d Cir. 2011).

[7] The New Jersey Law Against Discrimination "relies on the same analytical framework as the ADA." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 536 n.12 (3d Cir. 2007). Summary judgment is denied on Plaintiff's LAD claims for the same reason as his ADA and RA claims.

8

*3. Violations of the Fourteenth Amendment*

Plaintiff argues Defendants violated the Equal Protection Clause of the Fourteenth Amendment by failing to provide an accessible shower for him when non-disabled inmates were able to shower every day. Defendants assert Plaintiff is not a member of a suspect class and they had a rational basis for denying his request to have NJSP order an inmate orderly to assist him enter the showers.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Disability is "neither a suspect nor a quasi-suspect class" under the Fourteenth Amendment. *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 199 (3d Cir. 2000). *See also Bowers*, 475 F.3d at 553 "[T]he disabled are not a suspect class for purposes of an equal protection challenge."). "Under rational basis scrutiny, state action will survive as long as it merely furthers a legitimate state interest." *Lavia*, 224 F.3d at 199.

Under the New Jersey Administrative Code, "[i]nmates in general population shall be permitted to shower and shave daily, unless an emergency situation or security hazard exists." N.J.A.C. § 10A:14-2.2(a). "Each inmate in an Administrative Close Supervision Unit shall be given the opportunity to shave and shower not less than three times a week, unless permitting these activities would present an undue security hazard." N.J.A.C. § 10A:5-3.6(a). When a prison policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Court considers four factors in assessing the overall reasonableness of a prison policy: (1) "there must

9

be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" ; (2) "whether there are alternative means of exercising the right that remain open to prison inmates" ; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are alternatives to the policy that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 89-91. *See DeHart v. Horn*, 227 F.3d 47, 61 (3d Cir. 2000) (noting *Turner* "is equally applicable" to equal protection claims). Furthermore, the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) "[A]lthough the ultimate burden of persuasion is on the prisoner, the defendants bear the initial burden of making a showing on the first *Turner* factor." *Williams v. Sec'y PA Dep't of Corr.*, 541 F. App'x 236, 240 (3d Cir. 2013).

There are factual questions on the third and fourth prongs of the *Turner* test, for example the parties' experts disagree about the feasibility of further modification of NJSP's facilities. Therefore, there is a fact question as to whether Defendants violated the Fourteenth Amendment under the *Turner* test.

*4. Violation of the Eighth Amendment*

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Eighth Amendment imposes duties on prison officials

to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 676–77 (3d Cir. 2017) (quoting *Farmer*, 511 U.S. at 832). "To establish an Eighth Amendment conditions of confinement claim, [Plaintiff] must show that (1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety." *Id.* at 677 (quoting *Farmer*, 511 U.S. at 834). "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

A reasonable jury could determine that denying Plaintiff access to a daily shower while he was in regular and administrative segregated housing, regardless of the policy, was cruel and unusual punishment. Plaintiff uses adult diapers and has to sit in his own waste until he can clean himself. Reasonable people could find that requiring Plaintiff to remain trapped in his own waste for days without a shower violates basic human dignity. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). *See also Partelow v. Massachusetts*, 442 F. Supp. 2d 41, 50 (D. Mass. 2006) (recognizing that "reasonable access to safe bathing ... constitute[s] a component of civilized living" for purposes of a disabled prisoner's Eighth Amendment claim). "Prison officials may not deprive prisoners of basic necessities of life including adequate food, clothing, shelter, sanitation, medical care and personal safety. The eighth amendment is violated if a prisoner is deprived of

any of these necessities in isolation, segregation or protective custody." *Casey v. Lewis*, 834 F. Supp. 1569, 1581 (D. Ariz. 1993). This claim shall also proceed to trial.[8]

*5. ADA Retaliation*

Defendants also move for summary judgment on Plaintiff's ADA retaliation claim. "The ADA retaliation provision, 42 U.S.C. § 12203(a), states that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA].'" *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). "To prove a prima facie case of retaliation under the ADA ..., the plaintiff must demonstrate by a preponderance of the evidence that (1) he engaged in a protected activity; (2) he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Holland v. Simon Prop. Grp., Inc.*, 495 F. App'x 270, 272 (3d Cir. 2012). "Once a prima facie case is made, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse action. If the defendant meets that burden, the plaintiff has the burden of proving that the defendant's reason was merely pretextual." *Id.*

The Court denies summary judgment to Hayes and Saunders on Plaintiff's retaliation claim. Plaintiff testified during his deposition that Hayes and Saunders denied him access to the showers after they were served with the complaint.

> Q: Why do you think Officer Hayes and Officer Saunders were retaliating against you?

---

[8] "[B]ecause Plaintiff's evidence, if credited by the jury, is sufficient to demonstrate that he was subjected to unconstitutional conditions of confinement, the Court holds that the DOC's sovereign immunity defense is insufficient to defeat Plaintiff's ADA claim against it. . . ." *Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 318–19 (D.N.J. 2008), *aff'd sub nom. Muhammad v. NJ Dep't of Corr.*, 396 F. App'x 789 (3d Cir. 2010).

12

> A: I filed a lawsuit against Officer Hayes. And when the summons was served somewhere around the time that Officer Saunders began working on 2C and that's when they began to deny me to take a shower.
>
> . . . .
>
> Prior to Officer Saunders working there, I was taking showers. Once Officer Hayes received the summons to the lawsuit, Officer Saunders and Hayes at that time refused to let me take showers.

(Plaintiff's Deposition, ECF No. 106-3, 118:5-11, 18-22). In that same deposition, however, Plaintiff called into question the idea that the timing of his complaint was indicative of Hayes' and Saunders' retaliatory motives:

> Q: *So based on the timing it makes sense to you that they're retaliating?*
>
> A: *No, no.* I wrote quite a few defendants about the situation – I don't know how to put this. Saunders is a work – piece of work. I don't know how to put it in layman's term. I don't understand. Saunders is a piece of shit, excuse my French. That's all I can tell you. And he was very nasty towards me.

(*Id.* at 118:23 to 119:6) (emphasis added). The Court will deny summary judgment as there is a question of fact.

*6. Qualified Immunity*

Hayes and Saunders argue they are entitled to qualified immunity because they "removed Plaintiff from the Administrative Segregation Unit in response to his claims that he could not shower" and they "made reasonable modifications to the handicapped shower to improve its accessibility and offered Plaintiff's assistance into the handicap-accessible shower." (ECF No. 106-1 at 45). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). The first prong of the analysis "asks whether the facts, [t]aken in

13

the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]" *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (internal citation and quotation marks omitted).

The Court denies qualified immunity at this time because there are disputed issues of fact on Plaintiff's claims, as discussed *supra*. "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002).

*7. Injunctive Relief*

Defendants argue Plaintiff's claims for injunctive and declaratory relief are moot because he has been transferred to SWSP, which has a wheelchair-accessible shower.

"It is elementary that '[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.' An Article III court is precluded from issuing advisory opinions, and therefore is without jurisdiction 'to decide questions that cannot affect the rights of litigants in the case before them.'" *LaFaut v. Smith*, 834 F.2d 389, 395 (4th Cir. 1987) (quoting *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), *as amended* (May 29, 2003) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993)). *See also Mayon v. Capozza*, No. 2:14-CV-1203, 2015 WL 4955397, at *5 (W.D. Pa. Aug. 19, 2015) ("A prisoner's transfer or release from prison moots his

14

claims for declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional.").

An exception to the general rule exists "when a challenged action is (1) too short in duration 'to be fully litigated prior to its cessation or expiration'; and (2) 'there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again.'" *Sutton*, 323 F.3d at 248 (quoting *Abdul-Akbar*, 4 F.3d at 206)(alteration in original). "[I]n the absence of a class action, the 'capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (citing *Sosna v. Iowa*, 419 U.S. 393 (1975)).

The injunctive and declaratory relief claims are moot due to Plaintiff's transfer. "The exception is 'narrow and available only in exceptional situations.'" *Parkell v. Danberg*, 833 F.3d 313, 333 (3d Cir. 2016) (quoting *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007)). Plaintiff must "present more than generalities; he must establish a reasonable expectation that he, specifically, will again be subjected to the unconstitutional" conditions at NJSP. *Id.* (citing *OSHA Data/CIH, Inc. v. U.S. Dep't of Labor*, 220 F.3d 153, 168 (3d Cir. 2000)), The Third Circuit has described this test as a "difficult and fact-intensive question . . . when the plaintiff is still connected to the system." and he has not provided anything beyond conjecture that he may at some point be returned to NJSP. This lawsuit has been pending since 2013, not a "short" amount of time. Plaintiff was transferred to SWSP two years ago and has been there since. He points to a provision in the Administrative Code purportedly supporting the idea that the NJDOC has "unfettered discretion" to transfer him "at any time back to NJSP . . . ." (ECF No. 113 at 12-

13). This hardly rises above general speculation to meet the Third Circuit's "difficult and fact-intensive question . . . when the plaintiff is still connected to the system." *Parkell*, 833 F.3d at 333. *See also Abdul–Akbar*, 4 F.3d at 207 ("Such conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power. Because the district court had no support or basis for its 'reasonable expectation' that Abdul–Akbar 'could' again be incarcerated at MSU, we cannot sustain the district court's speculative hypothesis.").

Plaintiff has not provided anything to the Court other than speculation that he could be returned to NJSP. His injunctive and declaratory relief claims are therefore moot.

*8. Damages*

Defendants also assert Plaintiff is not entitled to damages for physical injuries because his injuries existed before the ADA violations and he has no medical expert to prove causation. (ECF No. 106-1 at 45).

Plaintiff has testified that he suffered "skin breakdown and boils in [his] lower extremities" when he was denied a shower due to sitting in his dirty diaper. (Plaintiff's Deposition, ECF No. 106-3, 111:17-19). He admitted he sometimes had boils when he received a shower. (*Id.* at 111:22-25). A reasonable jury could determine Plaintiff's skin condition was caused by the lack of shower even without an expert as it does not take specialized knowledge to know that sitting in human waste for an extended period of time is not good for one's health. Plaintiff will still have to prove causation, but he may take his claims to trial.

*9. Motion for Sanctions*

Finally, Plaintiff moves for sanctions under Rule 37 in the form of an order prohibiting Defendants from supporting their affirmative defense and from using Exhibit D to their motion

for summary judgment as evidence as they failed to provide it in discovery. The Court denies this motion.

In considering whether to exclude evidence as a discovery sanction, the Court considers "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 607 (D.N.J. 2004) (internal citation omitted). "An important final consideration is the importance of the excluded testimony to the proffering party's case." *Id.* "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 905 (3d Cir. 1977) (quoting *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).

There is nothing in the record that could support a finding of bad faith justifying the striking of all affirmative defenses. The Court denies Plaintiff's motion.

## V.

For the reasons stated above, the motions for summary judgment are denied. Plaintiff's injunctive relief claims are dismissed as moot, and his motion to strike Defendants' affirmative defenses is denied. The matter shall be set for trial.

DATED: January 8, 2019

_____
PETER G. SHERIDAN
United States District Judge